IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELAINE DALE STAFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:21-CV-03101-WJE |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Elaine Dale Stafford seeks judicial review[1] of a final administrative decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1382–1385. For the reasons that follow, the Court reverses and remands the decision of the Acting Commissioner for further consideration and development of the record.

### I. Background

Ms. Stafford filed a claim for DIB on May 8, 2019, and SSI on June 13, 2019. (AR 30, 154-65). She alleged a disability onset date of July 15, 2018, due to severe anxiety, agoraphobia, uncontrolled high blood pressure, strokes in 2012 and 2017, a heart attack in 2018, short term memory loss, occasional numbness in her extremities, cataract surgery, and constant hives when anxious. (*Id.* 10, 207). Her claims were initially denied on August 29, 2019. (*Id.* 125-30). She

---

[1] With the consent of the parties, this case was assigned to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

filed a written request for hearing before an Administrative Law Judge ("ALJ"), which was held on July 13, 2020. (*Id.* 146-47, 58-91).

On August 21, 2020, the ALJ denied Ms. Stafford's claim in a written decision. (*Id.* 10-23). The ALJ determined that although Ms. Stafford had severe impairments, none of them met or exceeded a listed impairment. (*Id.* 16-18). He also determined that Ms. Stafford retained the residual functional capacity ("RFC") to perform a full range of work with the following limitations: "she is able to frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; and must avoid all work-related exposure to hazards, such as unprotected heights and unguarded moving machinery." (*Id.* 18-21).

Following the ALJ's decision, Ms. Stafford filed an appeal with the Appeals Council. (*Id.* 155-53). The Appeals Council denied her request for review, leaving the ALJ's decision as the final decision of the Acting Commissioner. (*Id.* 1-4). Because Ms. Stafford has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the SSA in 42 U.S.C. §§ 423(d) and 1382c(a) rests on the claimant. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The SSA has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R §§ 404.1520, 416.920; *see Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019) (citation omitted). The Commissioner must evaluate:

(1) whether the claimant is presently engaged in a substantial gainful activity;
(2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;

(3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;

(4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and

(5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003) (citation omitted); *see also Perks v. Astrue*, 687 F.3d 1086, 1091-92 (8th Cir. 2012) (citation omitted).

### III. Standard of Review

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (quotation omitted). "Substantial evidence is less than a preponderance [of the evidence]," in that it merely requires that a reasonable person find the evidence adequate to support the Commissioner's decision. *Id.* (quotation omitted); *Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

The reviewing court must find deficiencies that significantly undermine the ALJ's determination to reverse and remand. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quotation omitted). Significant inaccuracies or incomplete analyses in the ALJ's opinion may, however, serve as a basis for reversal. *Draper*, 425 F.3d at 1130 ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.") (quotation omitted).

**IV. Discussion**

Ms. Stafford raises one issue in her appeal before this Court. She argues that the ALJ erred in finding her "mental impairments not severe and implement[ing] no corresponding limitations in the RFC." (Doc. 13 at 1, 8-16). The Court finds that remand is warranted because the evidence does not support the ALJ's determination that Ms. Stafford's mental impairments were not severe, and he compounded this error in failing to consider her anxiety and agoraphobia when formulating her RFC.

At step two of the five-step sequential evaluation process, the ALJ is required to assess the severity of the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). While Ms. Stafford has the burden of showing that her impairment is severe, this burden is not great. *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). Instead, step two of the evaluation process serves only to provide a *de minimis* threshold to screen out groundless claims. *See Bowen v. Yuckert*, 482 U.S. 137, 152-54 (1987).

In his decision, the ALJ frames his analysis by considering "the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments." (AR 14). The ALJ supports his finding that Ms. Stafford has only a mild limitation in this area by pointing to her ability "to adequately complete a pre-hearing function report detailing her limitations, [and] in so doing demonstrating an intact memory and attention span." (*Id.*) (citation omitted). The ALJ also relies on Ms. Stafford's demeanor during the hearing to justify his finding, observing that "[t]he claimant . . . testified without apparent difficulty at the hearing to information including her past medical history, prior work experience, and certain personal information, indicating an intact memory. Furthermore, the claimant responded

appropriately to questioning throughout the proceeding, thereby demonstrating appropriate concentration and attention span." (*Id.*). The ALJ next turned to the functional areas of interacting with others and managing oneself, again finding only a mild limitation. (*Id.* 14-15). He relied on Ms. Stafford's ability to perform activities of daily living, "such as bathing[,] . . . dressing herself, . . . cook[ing], clean[ing], and feed[ing] herself" to support his determination. (*Id.* 15). The ALJ also used Ms. Stafford's ability to drive as proof that she is able to "recall and use information, reason, and judgment." (*Id.*) (citation omitted). When addressing Ms. Stafford's frequent panic attacks, which occur two to three times per week, lasting thirty minutes to three hours, the ALJ pointed to Ms. Stafford's ability to clean her house during such an attack as evidence that she can complete tasks during an attack. (*Id.* 15, 73). The ALJ also discounted the finding of the non-examining State agency psychological consultant. (*Id.* 20). The consultant advised that Ms. Stafford had severe mental impairments and that she should be limited to simple, routine tasks with no public contact, occasional interaction with co-workers, and infrequent change. (*Id.* 102). The ALJ found this opinion "not supported by the evidence of record." (*Id.* 20). The ALJ instead cited general observations from neurological exams during emergency room visits, cardiology appointments, and an occupational therapy appointment, that describe Ms. Stafford as "cooperative," "pleasant," "[with] normal mood and affect," and "able to answer all questions and follow commands through the brief physical exam today." (*See id.* 338, 345, 352, 407, 416, 436).

The ALJ's evaluation of Ms. Stafford's mental impairments was flawed. First, Ms. Stafford would likely have been able to complete the function report in her home, minimizing any anxiety that might have triggered her memory and confusion problems. (*Id.* 441-43, 467). Additionally, relying on a claimant's ability to complete an application for benefits as evidence that she is not entitled to those very benefits would deprive every claimant of benefits. The record

does not contain any attestation by Ms. Stafford that she did not receive help in completing her function report. In fact, to the contrary, the record includes documents completed by Ms. Stafford's counsel, supporting the conclusion that she received assistance in pursuing her claim. (*See, e.g.*, *id.* 175-77).

Second, the ALJ fails to recognize that the hearing was held by telephone, and Ms. Stafford was able to participate from her home. (*Id.* 59). Accordingly, her demonstrated functional capacity during the hearing was not inconsistent with a severe impairment that, by definition, is caused by leaving her home.

Third, the tasks performed within her home are not inconsistent with a severe impairment that is exacerbated by leaving her home. The Eighth Circuit has recognized that a claimant need not be bedridden or helpless to be disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation and citation omitted). Additionally, the ALJ's assertion that Ms. Stafford could drive independently was mistaken. Her medical provider noted that Ms. Stafford reported "terrible anxiety" when driving, and Ms. Stafford testified that she only left the house for short times, with her husband, even then becoming shaky, nervous, and sick to her stomach. (AR 75, 467).

Fourth, Ms. Stafford explicitly testified that she was unable to be productive during her panic attacks. (*Id.* 73). As Ms. Stafford points out in her brief, the ALJ was erroneous in "dismiss[ing] . . . [Ms.] Stafford's severe symptoms by drawing his own lay inferences about her testimony." (Doc. 13 at 12; *See Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."))). In dismissing Ms. Stafford's panic attacks as non-severe, the ALJ disregarded the testimony of, and medication prescribed by, Ms. Stafford's medical provider. (AR 15). He points to Ms. Stafford's failure to seek specialized

mental health therapy in support of his claim that "there is little evidence available regarding the limitations imposed by [Ms. Stafford's] psychological conditions." (*Id.*). However, Ms. Stafford testified that she had not sought specialized mental health treatment because her insurance did not cover it. (*Id.* 74). Further, the record contains descriptions of Ms. Stafford's mental health impairments over the course of several years by her primary care provider. (*See, e.g.*, *id.* 372, 433, 441-45). Nurse Loretta Britz repeatedly recorded her assessments of Ms. Stafford's anxiety and agoraphobia. (*Id.*). She treated Ms. Stafford with a variety of medications to address her mental impairments, increasing dosages regularly.[2] (*Id.*). She also opined that, in addition to the medications' side effects of drowsiness and lack of focus, Ms. Stafford's mental impairments caused marked limitations in five of eleven areas of work-related mental functioning: the ability to remember locations and work-like procedures, the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and work week without interruption from her mental impairment. (*Id.* 441-42). Nurse Britz predicted that Ms. Stafford would be off task for at least 25% of the workday and would miss at least four days per month. (*Id.* 441). The ALJ was incorrect in relying upon his own inferences rather than documented determinations of medical professionals. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("An administrative law judge may not draw upon his own inferences from medical reports.") (citation omitted).

---

[2] On February 16, 2018, Ms. Stafford reported to Lauretta Britz, F.N.P., that she was doing well on paroxetine for her depression and anxiety and that she was taking hydroxyzine as needed for her anxiety. (*Id.* 354-57). However, on August 16, 2018, Ms. Stafford said she was experiencing high stress and anxiety and that the hydroxyzine did not relieve her symptoms. (*Id.* 348-52). Ms. Stafford was prescribed amlodipine and Buspar as a result. (*Id.* 352). On August 23, 2018, Ms. Stafford's dose of amlodipine was increased. (*Id.* 342-47). On April 18, 2019, in response to Ms. Stafford's expression of anxiety at her job and when in public, Nurse Britz increased the dosage of metoprolol and paroxetine. (*Id.* 374). Out of concern for Ms. Stafford's agoraphobia, Nurse Britz again increased Ms. Stafford's dose of paroxetine on May 6, 2019. (*Id.* 366-70). On July 31, 2019, Nurse Britz again increased the paroxetine dose and added alprazolam for the first time. (*Id.* 466-69).

If, as the ALJ claims, "there is little evidence available regarding the limitations imposed by the claimant's psychological conditions," then instead of relying on his own inferences, he had a duty develop the record. (AR 15; *See Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004); *See also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)). If the ALJ found the evidence in the record insufficient to determine the severity of Ms. Stafford's mental health impairments, then he should have obtained medical evidence that addresses Ms. Stafford's ability to function in the workplace. *See Nevland*, 204 F.3d at 858. To the extent the ALJ based his assessment of Ms. Stafford's impairments on a lack of evidence, his error requires remand to develop the record more fully. *See Martinette v. Acting Comm'r, Soc. Sec. Admin.*, No. 4:18-CV-00533-RK, 2019 WL 2914098, at *2 (W.D. Mo. July 8, 2019) (directing the ALJ to order an examination where the record contained insufficient medical evidence to support the RFC determination).

Lastly, the record shows that Ms. Stafford suffered from anxiety, frequent and debilitating panic attacks, and had a limited ability to interact with the public. (*See, e.g.*, AR 67, 72, 77-78, 368, 372). The ALJ erred when he failed to consider these impairments in formulating her RFC. *See Rouse v. Berryhill*, No. 4:17-CV-2511-DDN, 2019 WL 1359384, at *6 (E.D. Mo. Mar. 26, 2019) (finding that an ALJ's failure to find an impairment severe at step two is harmless only if the ALJ discusses the effects of the medically determinable impairments at the subsequent steps); *see also Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (finding that an ALJ's failure at step two to assess a severe mental impairment of borderline intellectual functioning required remand). Based on the vocational expert's testimony at Ms. Stafford's hearing, if she is off task 25% of the time, requires at least one extra fifteen-minute break per day, or is "limited in [her] concentration . . . to something less than a two-hour period," then she would be unable to sustain competitive

work and would thus qualify for benefits. (AR 89). The ALJ's failure to consider Ms. Stafford's mental impairments when formulating her RFC compounded his error at step two.

### V. Conclusion

For the reasons set forth herein, the Court finds the Acting Commissioner's determination that Ms. Stafford was not disabled is not supported by substantial evidence in the record. The decision is reversed and remanded for further consideration and development of the record.[3] Judgment shall be entered in accordance with this Order.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Acting Commissioner is reversed and remanded for further consideration and development of the record, as set forth herein.

Dated this 9th day of February, 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge

---

[3] If the Acting Commissioner's decision is reversed, the case should ordinarily be remanded for further proceedings "out of our abundant deference to the ALJ." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (quotation omitted). An immediate finding of disability is warranted only "if the record overwhelmingly supports such a finding." *Id.* (citation and quotation omitted).